MRS. MYRTLE W. BENNETT, ADMINISTRATRIX OF THE ESTATE OF A. C. BENNETT, DECEASED, v. SOUTHERN RAILWAY COMPANY, A CORPORATION.

(Filed 11 January, 1957.)

**1. Master and Servant § 26—**

Recovery under the Federal Employers' Liability Act must be based upon negligence of the employer which constitutes the proximate cause or one of the proximate causes of injury or death, the employer not being an insurer under the Act.

**2. Master and Servant § 27—**

Assumption of risk by whatever name called is not applicable to an action under the Federal Employers' Liability Act.

**3. Master and Servant § 28—**

Contributory negligence of the employee is not a bar to recovery under the Federal Employers' Liability Act.

**4. Master and Servant § 25b—**

An action under the Federal Employers' Liability Act is governed by the Federal rules of law.

**5. Negligence § 3½—**

Lightning is an act of God, but if there is negligence of defendant which joins with an act of God so that the negligence of defendant operates as an efficient and contributing cause of injury, defendant is liable.

**6. Master and Servant § 26: Trial § 31—**

In an action under the Federal Employers' Liability Act, motion for compulsory nonsuit is the proper procedure to present the question whether the evidence, with all reasonable inferences therefrom, is sufficient to show that defendant was guilty of negligence which constituted a proximate cause or one of the proximate causes of the injury or death. G.S. 1-183.

**7. Master and Servant § 26—**

Under the Federal Employers' Liability Act, it is the duty of the employer to use reasonable care to provide his employees with a safe place to work, and the reasonableness of the care must be commensurate with the danger of the business.

**8. Same—**

The evidence favorable to plaintiff tended to show that her intestate, a brakeman on a freight train, was ordered, while a violent electrical storm was still in progress, to leave shelter and resume work, and that he was struck and killed by a bolt of lightning while walking beside the tracks in the performance of his duties: *Held:* The evidence is insufficient to show negligence on the part of the railroad employer as a concurring proximate cause of the injury and death, and therefore nonsuit was properly entered.

**9. Negligence § 9—**

A defendant is not required to foresee events which are merely possible, but only those which are reasonably foreseeable.

**10. Master and Servant § 26—**

As a general rule, a railroad company is not liable to its employees for injuries resulting from climatic conditions.

**11. Evidence § 49—**

In an action to recover for death of an employee resulting from lightning, testimony of a witness to the effect that weather conditions were too bad for a person to be out in, is incompetent as invading the province of the jury.

**12. Appeal and Error § 41—**

Where the evidence admitted and the evidence excluded over plaintiff's objection are insufficient, considered together, to make out a case, the

exclusion of the evidence cannot be held prejudicial on appeal from judgment as of nonsuit.

JOHNSON, J., not sitting.

APPEAL by plaintiff from *Campbell, J.,* March Civil Term 1956 of MECKLENBURG.

Civil action for damages for alleged wrongful death of A. C. Bennett on 8 July 1947 instituted on 6 July 1948, under the provisions of the Federal Employers' Liability Act, by his widow as administratrix of his estate, for the benefit of herself and his dependent child.

On 8 July 1947 defendant operated a double-track railroad from Charlotte, North Carolina, to Spartanburg, South Carolina, which passed through Kings Mountain, North Carolina. Just south of Kings Mountain there was situate a plant of Superior Stone Company, and at or near this plant was a sidetrack or siding with two tracks serving the plant. About 11:30 a.m. on this day a freight train of defendant in transit from Spartanburg, South Carolina, to Charlotte, North Carolina, backed into this siding to clear the main line for a first class freight train to pass, preparatory to picking up some cars there loaded with stone. Plaintiff's intestate A. C. Bennett was a member of the train crew as a brakeman. Defendant admitted in its answer that at the time and place plaintiff's intestate was engaged in interstate commerce.

When the first class freight train had passed, the freight train came out of the siding, and the rear end of the freight train and the caboose were set out on the north bound main track. On the siding were some empty cars ahead of cars loaded with stone, which loaded cars were to be attached to the train for movement to another destination. The engine with some boxcars went into the siding to switch the empty cars, and get the loaded cars to connect with the train. While this work was going on, a severe storm with thunder, lightning, hail and rain came up in the vicinity, and the work was stopped.

J. R. Hardin, the conductor, who was dead at the time of the trial, was in charge of the train crew. While the work was stopped, F. W. Pickard, the flagman, and A. C. Bennett stayed for a time under a car. Pickard got wet, and both went and got in the cab of the engine. In a few minutes Bennett said: "I am going over to the cab," and went to the caboose on the north bound main track. A witness testified Bennett said he was going to the caboose for a raincoat. When he arrived, he and the conductor were in the caboose, and the rest of the train crew were in the cab of the engine.

J. B. Murphree, a brakeman on the train, on his adverse examination by plaintiff, testified in substance as follows: He saw J. R. Hardin, the conductor, get out of the caboose ahead of A. C. Bennett. Hardin came

to the cab of the engine where the other members of the train crew were, and Bennett went another way. Hardin said, "we'd make a move, and pull the loads out, and we'd clear the main line, and let the north bound go, we'd get those loaded cars." Bennett's duties in connection with moving this train were about the same as his: checking the couplings and brakes on the loaded cars to be connected and moved. Murphree went in the same direction Bennett was going, only he was on the side-track and Bennett was on the main line. Murphree testified: "The storm had slacked up when we all went to work there." He did not see Bennett struck, but there was a bolt of lightning and thunder, and he saw Bennett down and lying east of the north bound main line, with a fusee in his hand. He had heard no conversation between Hardin and Bennett immediately prior to Bennett's being struck.

M. G. Gordon, the engineer, who was adversely examined by plaintiff, testified the lightning and thunder had slackened up, when he saw Bennett down on the ground.

F. W. Pickard, the flagman, who was adversely examined by plaintiff testified on cross-examination: "The storm had slackened up when this thing happened; it had stopped . . . The lightning that struck Mr. Bennett was not the last lightning that occurred. It had been raining and thundering and lightning, I'd say, about 15 minutes prior to the time he was struck." Pickard testified he could not say that Bennett received an order from the conductor.

S. H. Ware, the fireman, upon his adverse examination by plaintiff, testified he saw Bennett falling, and his fall was preceded by a loud crash of thunder, but he does not remember any flash of lightning. He further testified that when the conductor got out of the caboose and started to the engine, Bennett started walking to the cars to be loaded. He also testified, "this storm had slackened up when this thing occurred."

Robert Dawkins, a witness for plaintiff, testified he was hauling gravel to be loaded in boxcars. A storm came up while they were loading, and the belt was cut off. There was a path on the east side of the main line where Bennett was walking, a little bit down below the end of the cross ties, and the ground sloped from the end of the cross ties down to the path. When he first saw his body, his feet were in the path and the upper half of the body was lying up on the rock bed near the cross ties. It was raining hard, and Bennett's clothing was "wringing wet." It was thundering and lightning all around, sort of like it was striking close by.

Carl Mayes testified for plaintiff he was superintendent for Superior Stone Company. That the storm this day was severe or violent, and they had closed down their operations at the plant, due to the storm.

John Setzer, a witness for plaintiff, testified that at the time Bennett was put in a car to go to a doctor, it was pouring rain, and there was a lot of thundering, lightning and hail.

Amos Stacy testified as a witness for plaintiff that it was raining, thundering and lightning when Bennett was killed.

Plaintiff alleged in her complaint that her intestate was killed either by an explosion of a fusee or by lightning, and the defendant in its answer admitted that he was killed by lightning.

H. E. Fulcher, Professor of Physics at Davidson College, where he had taught a course dealing with lightning for 31 years and a course in meteorology for 11 years, was held by the court to be an expert witness as a physicist. Immediately prior to such holding by the court, the court asked Mr. Fulcher this question: "Do you consider yourself as a physicist or an expert in lightning?" He replied: "No, sir, I'm a physicist." Mr. Fulcher testified in substance as follows: Lightning coming from the clouds to the ground takes the path of least resistance, and the path is shortened for a place that is higher than the surroundings, so a higher place increases the hazards there considerably. A steel rail is a conductor of electricity. Such a rail laid on cross ties with the cross ties having a ballast of stone some 12 inches thick increases the hazards from electricity from a storm in which there is lightning. It is common knowledge one should not during an electrical storm be near telephone wires or piles of steel. If a person is out in a storm with lightning, and is on the ground at a point elevated above the ground close by, and steel rails of a railroad are on this elevated place, it is a more hazardous position for a person to be in than in a railroad caboose. Any shield, whether it be metal or wood, deflects lightning. The human body is classified as a conductor of electricity. If a person's clothing is wet and he is walking on wet ground, that would increase the conductibility of the human body. A ballast of stone is a poor conductor. All rock is a good insulator. A stone ballast under a rail would have a tendency to keep electricity in a rail from getting from the rail to the ground.

No burnt marks were seen on Bennett's body. His right trousers' leg was torn a bit on the bottom, and scorched, his raincoat was split, a shoe was knocked off, and the sock on the foot with the shoe off was scorched.

S. H. Ware testified he saw Bennett fall to the ground, and the fill on which he fell was about 12 to 15 feet above the natural ground around. There was other evidence the fill was 16 to 18 feet above the ground.

There was a line of telephone poles running along the railroad track, and between the sidetrack and main line. The poles were 22 to 25 feet high. The poles between the sidetrack and main line were in a ravine,

and there was not much difference in the elevation between the height of the top of the railroad track and the wires on the poles.

From a judgment of nonsuit entered at the close of plaintiff's case, upon motion of the defendant, plaintiff appeals.

*William H. Abernathy, Guy T. Carswell and James F. Justice for Plaintiff, Appellant.*

*W. T. Joyner and Robinson, Jones & Hewson for Defendant, Appellee.*

PARKER, J.   The Federal Employers' Liability Act, as set forth in U.S.C.A. Vol. 45, sec. 51, provides that every common carrier by railroad, while engaged in interstate or foreign commerce, shall be liable in damages, in case of the death of one of its employees, to his or her personal representative, for the benefit of certain enumerated persons, for such death "resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment."

By the explicit words of the Act the basis of liability of the carrier is negligence, however much Judges may disagree as to what facts are necessary to constitute negligence.   Although the decisions under the Act are most liberal in allowing employees to recover, it has been held time and again that the Act does not make the carrier an absolute insurer against personal injuries or death suffered by its employees, and that recovery lies solely upon the concurrence of negligence on the part of the carrier and injury or death as cause and effect.   *Wilkerson v. McCarthy,* 336 U.S. 53, 93 L. Ed. 497; *Tiller v. A. C. L. R. Co.,* 318 U.S. 54, 87 L. Ed. 610.

The 1939 amendment to this Act released the employee from the burden of assumption of risk by whatever name it was called.   *Tiller v. A. C. L. R. Co., supra.*

The Act, as set forth in U.S.C.A. Vol. 45, sec. 53, provides that contributory negligence shall not bar a recovery of damages by an injured employee, or by his personal representative where such injuries have resulted in death.

In *Bailey v. Central Vermont R. Co.,* 319 U.S. 350, 87 L. Ed. 1444, the Court said: "The rights which the Act creates are federal rights protected by federal rather than local rules of law."   See Anno. U. S. Supreme Court Reports, 96 L. Ed. 408, *et seq.*

Plaintiff's intestate was killed by lightning.   Lightning, or a bolt or stroke of lightning, occurring in the atmosphere during storms is an act of God.   *Gleeson v. Virginia Midland Railway Co.,* 140 U.S. 435,

35 L. Ed. 458, 462; *Sauer v. Rural Co-op. Power Assn. of Maple Lake,* 225 Minn. 356, 31 N.W. 2d 15; Words and Phrases, Permanent Ed., Vol. 2, Act of God, pp. 287-288, Lightning.

In *Ferebee v. R. R.,* 163 N.C. 351, 79 S.E. 685, *Hoke, J.,* writing for the Court said, quoting from Shearman and Redfield on the law of negligence, 6th Ed., sec. 16b: " 'The rule is the same when an act of God or an accident combines or concurs with the negligence of the defendant to produce the injury, or when any other efficient cause so combines or concurs; the defendant is liable if the injury would not have resulted but for his own negligent act or omission.' " See also: *Ridge v. R. R.,* 167 N.C. 510, 83 S.E. 762; *Comrs. v. Jennings,* 181 N.C. 393, 107 S.E. 312; *Lawrence v. Yadkin River Power Co.,* 190 N.C. 664, 130 S.E. 735.

In *Kindell v. Franklin Sugar Ref. Co.,* 286 Pa. 359, 363, 133 A. 566, 568, the Supreme Court of Pennsylvania tersely said: "He whose negligence joins with the act of God in producing injury is liable therefor."

Legal responsibility for negligence joined with an act of God depends upon the fact that the negligence operated as an efficient and contributing cause of injury. Otherwise, the case will fall within the rule that no action lies for an injury attributable to an unavoidable accident. "One who is under a duty to protect others against injury cannot escape liability for injury of such others on the ground that it was caused by an act of God unless the natural phenomenon which caused the injury was so far outside the range of human experience that ordinary care did not require that it should be anticipated or provided against, and it is not sufficient that such phenomena are unusual or of rare occurrence." 65 C.J.S., Negligence, p. 433.

In *Brady v. Southern R. Co.,* 320 U.S. 476, 88 L. Ed. 239, the Court said: "The weight of the evidence under the Employers' Liability Act must be more than a scintilla before the case may be properly left to the discretion of the trier of fact—in this case the jury. Citing authority. When the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding by nonsuit, directed verdict or otherwise in accordance with the applicable practice without submission to the jury, or by judgment notwithstanding the verdict."

In *Tennant v. Peoria & Pekin Union R. Co.,* 321 U.S. 29, 88 L. Ed. 520, it is said: "In order to recover under the Federal Employers' Liability Act, it was incumbent upon petitioner to prove that respondent was negligent and that such negligence was the proximate cause in whole or in part of the fatal accident. Citing authorities. Petitioner was required to present probative facts from which the negligence and the causal relation could reasonably be inferred. 'The essential requirement is that mere speculation be not allowed to do duty for proba-

tive facts, after making due allowance for all reasonably possible inferences favoring the party whose cause is attacked.'" Citing authorities.

In *A. C. L. R. Co. v. Craven*, 185 F. 2d 176, *certiorari* denied, 340 U.S. 952, 95 L. Ed. 686, the Court said: "Dangers are implicit in such occupations as railroading, and railroads are not insurers of their employees."

The precise question we have for decision is this: Considering the plaintiff's evidence as true and in the light most favorable to her, and giving to her all reasonably possible inferences to be drawn therefrom, has she produced evidence that the defendant was negligent, and that such negligence joined with an act of God was the proximate cause in whole or in part of the death of plaintiff's intestate? If so, her case should have been submitted to the jury. If not, the judgment of nonsuit below is correct. A motion for a compulsory nonsuit under G.S. 1-183 is the proper procedure to test the legal sufficiency of the evidence to carry the case to the jury.

Plaintiff does not contend that her intestate's death was caused by reason of any defect or insufficiency, due to defendant's negligence, in its cars, engines, appliances, machinery, track, roadbed, works or other equipment. Plaintiff's contention is that defendant negligently failed to exercise ordinary care to provide her intestate a reasonably safe place to work by requiring him during a severe storm accompanied with lightning to leave the caboose and to go out on the tracks to couple boxcars.

At common law the duty of the employer to use reasonable care in furnishing his employees with a safe place to work was plain. Such rule is deeply embedded in federal jurisprudence, and applies to the Federal Employers' Liability Act. *Bailey v. Central Vermont R. Co.,* *supra.* In *Patton v. Texas & P. R. Co.,* 179 U.S. 658, 45 L. Ed., 361, 365, the Court said: ". . . there is no guaranty by the employer that place and machinery shall be absolutely safe. . . . Reasonable care becomes, then, a demand of higher supremacy; and yet, in all cases it is a question of the reasonableness of the care; reasonableness depending upon the danger attending the place or the machinery." The last sentence was quoted in *Bailey v. Central Vermont R. Co., supra.* In other words, the standard of care must be commensurate to the danger of the business.

Under the defendant's Book of Operating Rules, the conductor J. R. Hardin had charge of the train and all employees thereon, and he was responsible for the performance of their duties by the train employees. The duties of the operating crew of a freight train require them to expose themselves off the train and on the tracks in all sorts of inclement weather, in pouring rain, in storms with lightning, in hail, sleet and

snow, in freezing cold and torrid heat. The conductor and plaintiff's intestate left the caboose together, while, taking the evidence in the light most favorable to plaintiff, it was still pouring rain, thundering and lightning. However, it is significant that there is no evidence that the lightning of the storm struck any person or object, with the exception of the tragic death of plaintiff's intestate, and further that while the storm was going on plaintiff's intestate left the engine on the sidetrack, and walked through the storm to the caboose on the main track to get his raincoat. The conductor walked to the engine on the sidetrack, where the other members of the train crew were, and said, "we'd make a move, and pull the loads out." The conductor was dead when the trial took place. There is no evidence as to what he said to plaintiff's intestate about leaving the caboose. But it would seem to be a fair inference from the evidence that he told plaintiff's intestate, "we'd make a move and pull the loads out," or spoke words of similar meaning, and that plaintiff's intestate considered it an order he was bound to obey, and went on the tracks to perform his duty as a flagman in coupling the loaded cars on the sidetrack. There is no evidence that defendant was the owner or had anything to do with the telephone poles and wires near its track at the site. It is common knowledge that telephone and telegraph poles and lines are frequently run parallel with railway tracks.

The narrow question we have is whether the conductor telling or ordering plaintiff's intestate to get out of the caboose and go outside to perform his duties was negligence, that is a failure to exercise reasonable care depending upon the danger attending the place and time. Where lightning will strike, to use a Mohammedan phrase, God knows. The Texas Court of Civil Appeals said in *Western Telephone Corp. v. McCann,* 69 S.W. 2d 465:

"It may be technically true, as appellant and its experts contend, that the phenomena of lightning is 'highly complex,' rather than 'freakish.' As a practical matter, the uncertainties inherent in a bolt of lightning may not be encompassed in either or both of those terms, or in any term of any known language. It is known, only, that it is all-powerful, all-embracing, inconsistent, inscrutable, searching, terrifying, beautiful, deadly. It is no respector of persons, places, or occasions."

A railroad must operate its trains through fair weather and foul, and cannot stop all switching operations until all electrical storms are over, if it is efficiently to operate its business. The test is whether reasonable men, examining the circumstances there and then and the likelihood of injury from lightning, would have ordered the train crew and plaintiff's

intestate to make a move and pull the loaded cars out. In our opinion, after considering all the evidence in the light most favorable to plaintiff, and accepting it as true, and giving her the benefit of all reasonable inferences to be drawn therefrom, the only reasonable conclusion at which fair-minded men could arrive is that the danger at the time and place of being struck by lightning was so remote as to be beyond the requirement of due care, and, therefore, the death of plaintiff's intestate was not caused in whole or in part by any negligence on defendant's part. Bare possibility is not sufficient. *Milwaukee & St. P. Ry. Co. v. Kellogg,* 94 U.S. 469, 24 L. Ed. 256. "Events too remote to require reasonable prevision need not be anticipated." *Brady v. Southern R. Co., supra.* To hold otherwise would be to make defendant an insurer.

In *Fort Worth & Denver City Ry. Co. v. Smith,* 206 F. 2d 667, the Court said: "It is a general rule that a railway company is not liable to its employees for injuries resulting from climatic conditions, such as ice and snow; but within its yard limits it must exercise a degree of care commensurate with the risks to prevent the accumulation of snow and ice in such quantity, form, and location as to be a menace to the safety of its employees working in its yards."

Amos Stacy, a witness for plaintiff, testified that on the day Bennett was killed, he was down in a pit at the crusher of the Superior Stone Company plant. That the plant was not in operation for sometime before lunch on account of the storm, lightning, thunder and rain. He was asked by plaintiff's counsel to what extent it was thundering and lightning at the place where Bennett was killed, when he arrived there. He answered: "It was still thundering and lightning. It was too bad to be out insofar as walking and doing anything was concerned. The plant had not been operating for the last hour or so on account of the rain." Defendant's counsel made a motion "to strike out the statement that the conditions were too bad." The court allowed the motion, and plaintiff excepted, and assigns this as error. The evidence was properly excluded.

In *Parks v. Sanford & Brooks, Inc.,* 196 N.C. 36, 144 S.E. 364, it was held that whether or not the place at which plaintiff's intestate was at work was unsafe is a question for the jury, and the opinion of witnesses with respect to this matter was not competent, and was properly excluded as evidence. In *Wilson v. Lumber Co.,* 186 N.C. 56, 118 S.E. 797, testimony of non-experts that the wire cable furnished was unsuitable and improper for the work was held erroneously admitted in evidence. In *Marshall v. Telephone Co.,* 181 N.C. 292, 106 S.E. 818, the opinion of a witness that the place was not safe was improperly admitted and constituted reversible error. See also: *Marks v. Cotton*

*Mills,* 135 N.C. 287, 47 S.E. 432; *Phifer v. R. R.,* 122 N.C. 940, 29 S.E. 578.

Plaintiff assigns as error the exclusion as substantive evidence of the report of the conductor, which was signed by other members of the train crew, to the defendant as to plaintiff's intestate's death. The court permitted the plaintiff to read this report to the jury for the purpose of corroborating the testimony of S. H. Ware, the fireman. Such report is to a large extent similar to evidence admitted without objection, and the reasonable inferences to be drawn therefrom. However, if it were improperly rejected as substantive evidence, such report considered as substantive evidence in connection with all the other evidence in the case would be insufficient to take the case to the jury.

Plaintiff also assigns as error the refusal of the court to permit the witness H. E. Fulcher to answer certain hypothetical questions and other questions. This is in substance the answer of Mr. Fulcher to one hypothetical question: My opinion is that lightning from the rail killed Mr. Bennett. As he walked south, his right foot was nearest the rail. Now, no evidence has been brought out that he was walking on the end of the cross ties, but that is the way railroad men walk. I have been with them, and have seen them. They walk on the end of the cross ties. They don't walk off, unless there is a good path. I have gone over there and measured these cross ties, and if he was walking normally on the end of the cross ties, his right foot was any-where from 4 to 6 inches away from the rail. His right shoe was torn, his sock charred. This is the substance of other testimony of Mr. Fulcher, which was excluded: Electricity from a bolt of lightning can jump from one conductor to another for 12 or 15 feet. My opinion is that the lightning that killed Mr. Bennett came from the steel rail of the track, though I do not rule out the possibility it could have come from above. The bolt of lightning being carried by the steel rail could have come from several miles away, north or south. The excluded testimony of Mr. Fulcher has been carefully considered, and, if it were competent in whole, which we do not concede, such testimony considered with all the other evidence would not make out a case for the jury.

If the excluded testimony of Carl Mayes were competent, it would not strengthen plaintiff's case.

In *Metropolitan Railway Company v. Jackson,* 3 App. Ca., House of Lords, 193, Law Reports 1877-78, the eminent Lord Chancellor, *Lord Cairns* said: "It would be a serious inroad on the province of the jury, if, in a case where there are facts from which negligence may reasonably be inferred, the Judge were to withdraw the case from the jury upon the ground that, in his opinion, negligence ought not to be inferred; and it would, on the other hand, place in the hands of the jurors a power which might be exercised in the most arbitrary manner,

if they were at liberty to hold that negligence might be inferred from any state of facts whatever."

Plaintiff's intestate's death was a tragic accident. Hard cases make bad law. It is our duty not to make law, but to administer it. In our opinion the judgment of nonsuit below under the Act as written and the evidence was correct.

Affirmed.

JOHNSON, J., not sitting.