Hugh F. BRITT (Plaintiff), Respondent,

v.

**TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS,** a corporation (Defendant), Appellant.

No. 29741.

St. Louis Court of Appeals.

Missouri.

March 4, 1958.

Albert E. Schoenbeck, Robert C. Ely, St. Louis, for appellant.

Eugene B. Overhoff, St. Louis, James W. Jeans, Hullverson, Richardson, Hullverson & Jeans, St. Louis, of counsel, for respondent.

RUDDY, Presiding Judge.

This is an action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. Defendant appeals from a judgment of $3,000 in favor of plaintiff. Defendant contends that plaintiff failed to make a submissible case of negligence for the jury.

Plaintiff was a baggage foreman at Union Station in St. Louis, Missouri. At the time of the accident his hours of work were from 6 P.M. to 2:30 A.M. He had been employed by the defendant company for 15 years and in the last 4 of those years he was a baggage foreman. It is admitted by defendant that a part of plaintiff's duties as baggage foreman directly or substantially affected or was in furtherance of interstate commerce. The accident from which plaintiff sustained his injuries occurred at about 10:20 P.M. of March 25, 1955.

Plaintiff was the foreman of a crew of 12 men. It was his duty to direct the loading of mail and baggage in railroad cars that had been placed on tracks in the Union Station. At times he assisted in the loading of mail and baggage in these cars and often would pull the wagons, referred to as "bull trucks," when the men were busy and needed such help. His crew of men loaded four trains and assisted in the loading of mail and baggage on another. At the time of the accident they were loading "Mountain 37," a Missouri Pacific train.

There are many tracks for incoming and outgoing trains at Union Station. Most of these tracks are under the main shed of the station. The train that was being loaded with mail and baggage at the time of the accident was stationed on Track No. 2. This track is not under the main shed of Union Station. Between Track No. 2 and Track No. 3 there is a platform that runs parallel with these tracks. There are four such platforms that are not under the main shed of Union Station and each is covered by an umbrella shed. These umbrella sheds only cover the platforms under them and do not cover the adjoining tracks. The evidence showed there is an open space of 12 to 16 feet between each of the umbrella sheds that cover the platforms. This space permits snow and rain to blow under the sheds onto the platforms.

The tracks and the platforms run from north to south and at the north end of each track there is a mound of steel and concrete to prevent the trains from backing into the waiting room of Union Station. This mound is known as a bumper.

The bull trucks referred to above hold 25 to 35 sacks of mail. They are about 2½ feet high and about 12 feet in length. The sacks of mail weigh from 70 to 100 pounds each. There is a front and back on these bull trucks, but there are no side boards. They are pulled, loaded with mail and baggage, from the Post Office and from points within Union Station by tractors. Several of these bull trucks loaded with mail and baggage were placed on the platform between Track No. 2 and Track No. 3. The contents of these bull trucks were to be transferred to the "Mountain 37" train.

When plaintiff came to work the evening of the accident it was snowing and had been snowing for some time prior to reaching Union Station at 6 P.M. Plaintiff said there was an inch of snow on the ground when he arrived at the station. The platform between Tracks 2 and 3 had snow on it when plaintiff reported for work. All of plaintiff's witnesses agreed the wind was blowing most of the day and evening and that it had blown snow under the umbrella shed onto the platform. Plaintiff testified that it was snowing at the time he had the accident. He also admitted the wind was blowing at that time.

Some time prior to the accident salt had been spread on the platform from a point beginning at the south end of the first car south of the bumper to a point approximately two car lengths from the beginning point. No salt had been spread from the bumper to the south end of the first car, because this was a passenger car and would receive no mail or baggage. It seems the salt was spread to melt the snow that had accumulated on the platform. The evidence indicated the spreading of the salt was done some time between 7 P.M. and 9 P.M. the evening of the accident. Plaintiff testified he saw the men spreading the salt.

The evidence further showed that at the time of the accident the area on the platform between the bumper and the south end of the first car was covered with snow. The snow in this area was packed solidly and offered a relatively firm footing. However, the evidence further showed that the area of the platform, immediately south of the first car, where the salt had been spread, and more especially where plaintiff fell, was wet and slushy, and the witnesses seemed to agree that a crust had formed on top of the slush. We take their testimony to mean that a crust of snow had formed on top of the slush for it was snowing at the time of the accident. One of the witnesses testified, "* * * it was just a thick crust like there, and slush, and it was slick in there where he fell." Plaintiff

testified he did not know the slush was under the crust and said, "it all looked alike to me" meaning this area where he fell and the area between the bumper and the end of the first car looked the same.

One of the loaded bull trucks had been placed by a tractor operator between the bumper and the south end of the first car. It will be remembered the testimony shows no salt had been spread in this area. Plaintiff saw that the men who were loading mail and baggage on the train "Mountain 37" were about ready for another load and no one being around to help, he undertook to pull the aforementioned bull truck down to his loading crew. He testified he took hold of the tongue of the truck and started to pull. When he first started to pull the truck he was in the area where the salt had not been spread and "had solid footing." However, after he moved the truck about half a car length south, he testified, "my feet went out from under me due to the slush that was under that snow—I was down just in an instant." He said he fell in the area where the salt had been thrown. Plaintiff's version of how and where he fell was verified by some of the witnesses. When he fell he struck a part of the tongue of the truck and the platform injuring a finger. His back and side were injured when the truck struck him in the right side. Plaintiff testified he did not think he needed help to pull the truck. One of the witnesses for plaintiff testified that he was behind the truck plaintiff was pulling. He had his hand on the upper end of the back of the truck, "just holding onto it, and walking behind it." He further testified no one else was on the platform at the time.

All of the witnesses, except one, testified they saw no one shoveling snow or slush or attempting to remove it in any manner from the platform. One of the witnesses testified he attempted to clean the slush off the platform and was stopped. When he was asked who stopped him, he said, "The general foreman told me to go back to the mail, that I was handling mail not

cleaning snow." Plaintiff testified that spreading the salt on snow "didn't do any good." Another witness thought the spreading of cinders would prove more effective. In response to a question by counsel for defendant, plaintiff testified he thought the "snow could have been shoveled" off of the platform.

■ Defendant contends its motion for a directed verdict or for judgment notwithstanding the verdict should have been sustained because plaintiff failed to prove that defendant failed to exercise reasonable or ordinary care to furnish plaintiff with a safe place to work. The extent of the employer's duty under the Federal Employers' Liability Act is well stated in Reese v. Illinois Terminal Railroad Company, Mo., 273 S.W.2d 217, loc. cit. 221, as follows:

"The Federal Employers' Liability Act does not specifically state a rule that it is the employer's duty to exercise (due, ordinary or) reasonable care in providing the employee with a reasonably safe place to work; but the Act makes the employer liable in damages for any injury to death resulting in whole or in part from his *negligence*. The rights which the Act creates are federal rights protected by federal rather than local rules of law. The federal rules have been largely fashioned from the common law, except as Congress has written into the Act different standards. Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S. Ct. 444, 87 L.Ed. 610. At common law the duty of the employer to use reasonable care in furnishing his employees with a safe place to work was plain. Reasonable care *contemplates the precautions commensurate with the dangers to be encountered in the circumstances* or, as has been said by the Supreme Court of the United States in cases involving employers' requisite care in furnishing safe appliances and a safe place to work, ' "in all cases it is a question of the reasonableness of the care, *reasonableness depending up-*

*on the danger attending the place or the machinery."'* Bailey v. Central Vermont Ry., 319 U.S. 350, 63 S.Ct. 1062, 1064, 87 L.Ed. 1444; Patton v. Texas & P. R. Co., 179 U.S. 658, 21 S.Ct. 275, 45 L.Ed. 361; Malone v. Gardner, 362 Mo. 569, 242 S.W.2d 516. The employer is not the insurer of his employee's safety. And, it would seem that the employer has fulfilled his duty to his employee if the appliance or tool or place to work furnished is reasonably safe, or if the employer has exercised reasonable care to make it safe. It has been said that, strictly speaking, the test is not whether the tools to be used and the place in which the work is to be performed are absolutely safe, but whether the employer has exercised reasonable care to make them safe. Atlantic Coast Line R. Co. v. Dixon, 5 Cir., 189 F.2d 525, certiorari denied 342 U.S. 830, 72 S.Ct. 54, 96 L.Ed. 628; Vol. 3, Labatt's Master & Servant, 2d Ed. § 920, pp. 2448–2456."* (Italics ours.)

Defendant in connection with its contention asserts it is not liable to its employees for injuries resulting from climatic conditions such as snow and ice, citing Fort Worth & Denver City Ry. Co. v. Smith, 5 Cir., 206 F.2d 667; Anderson v. Elgin, Joliet & Eastern Railway Co., 7 Cir., 227 F.2d 91, and Bennett v. Southern Railway Company, 245 N.C. 261, 96 S.E.2d 31.

In the first of these cases, Fort Worth & Denver City Ry. Co. v. Smith, supra [206 F.2d 669], the facts show that on the morning of the accident when the employee reported for work the temperature was down to freezing and the entire yard area was covered with snow, ice and sleet. This condition had existed continuously for some time prior to the day of the accident and, according to the records of the United States Weather Bureau, continued until 12:10 P.M. of the day of the accident. The employee reported for work about 8:30 A.M. and the opinion indicates that soon thereafter he

was found lying on the ground close to one of the tracks in the yard. There was no eyewitness to the occurrence of the accident. The opinion points out that the evidence did show that the graveled area in which he was found was very slick. The defendant in the instant case points to the language in this case wherein the court said that it is a general rule that a railway company is not liable to its employees for injuries resulting from climatic conditions such as ice and snow. However, the opinion went on to say "but within its yard limits must exercise a degree of care commensurate with the risks to prevent the accumulation of snow and ice in such quantity, form, and location as to be a menace to the safety of its employees working in its yards. * * * The duty of providing a reasonably safe place for the carrying on of the work is a continuing one and must be exercised whenever circumstances demand it."

The facts in the aforesaid case reveal that the casualty occurred at a time when the snow, ice, sleet and rain were falling. The court held there was "sufficient evidence to go to the jury on the question whether, as alleged in the complaint, appellant was negligent in failing to use reasonable care in furnishing Smith with a safe place to work."

This case does not support the contention that the employer is not liable to its employees for injuries resulting from climatic conditions such as snow and ice.

In the case of Anderson v. Elgin, Joliet & Eastern Railway Co., supra [227 F.2d 97], plaintiff was a switchman employed by the defendant in its millyard at Gary, Indiana. On the morning of January 4, 1950, he reported for work at 7 A.M. and about 30 minutes later stepped to the ground from an engine on which he was riding. The ground was covered with ice. He slipped, fell and received his alleged injuries. The facts related in the opinion show that the injuries occurred while the storm causing the freezing condition was still in progress. Defendant argued that its yards were covered with a coat of ice as a result of the severe storm which did not cease until after plaintiff had commenced his work. Such being the situation, it argued, reasonable care did not require it to call forth its section crew in the nighttime and during the progress of the storm and thereby expose them to its hazards for the purpose of attempting to remove the ice which had accumulated in its yard. It pointed out that such an effort would have been futile during the progress of the storm and that its section crew was immediately assigned to the task of clearing the yard upon its arrival for work at about the same time the storm ceased, contending that this was all defendant could have reasonably been expected to do.

The court after reviewing many cases denied defendant's contention and held that the plaintiff had made a submissible case for the jury. Relevant to the aforesaid point discussed by the court was its ruling in connection with an instruction which had been tendered by the defendant and refused by the trial court which instruction included the following statement: "You are instructed that the defendant was under no duty to remove ice and sleet in the Mill Yard or to take any other corrective action with respect to the ice and sleet until a reasonable time had elapsed after the freezing rain had ceased." The court said in connection with this portion of the instruction that "this is a good argument but we think it is an incorrect statement of law. Defendant, as heretofore shown, was under a continuing duty to exercise reasonable care in furnishing plaintiff a reasonably safe place to work, and whether such care required it to take action prior to the cessation of the storm was a matter for the jury's consideration."

This case fails to support defendant's contention in the instant case and to the contrary is support for the trial court's action in submitting the question of defendant's negligence to the jury.

In the case of Bennett v. Southern Railway Company, supra, a brakeman employed by the defendant was killed by lightning while working in the rain. In this case plaintiff contended that the defendant negligently failed to exercise ordinary care to provide her intestate a reasonably safe place to work by requiring him during a severe storm accompanied with lightning to leave the caboose and to go out on the tracks to couple boxcars. The trial court held that plaintiff had not made a submissible case for the jury and entered a judgment of nonsuit. This judgment was affirmed on appeal, the court holding (96 S. E.2d loc. cit. 38) "the only reasonable conclusion at which fair-minded men could arrive is that the danger at the time and place of being struck by lightning was so remote as to be beyond the requirement of due care, and, therefore, the death of plaintiff's intestate was not caused in whole or in part by any negligence on defendant's part."

The court did point out that a railway must operate its trains through fair weather and foul and cannot stop all switching operations until all electrical storms are over. However, this is not to say that where snow and slush have accumulated on a platform where employees are working, that all reasonable men would agree that the defendant railway company had no further duty to remedy the condition after having spread the salt.

■ The duty of the carrier is a continuing one and if after the defendant spread the salt the platform was still unsafe, it continued to have the duty to exercise reasonable care to make the platform safe for plaintiff and the other employees working thereon. Defendant takes the position that having spread the salt it had no further duty. This is not the law. Its duty, as we said above, is a continuing one. If, after spreading the salt, an unsafe place resulted or remained, it continued to have the duty to exercise reasonable care to make the platform safe.

Defendant complains that if it had not spread salt it could have been held negligent under the holding in Reese v. Illinois Terminal Railroad Company, supra, because it did not do something about the snow on the platform. Defendant also argues that if plaintiff is permitted to recover in this case, the effect will be that defendant will be subject to being held liable for scattering salt and also for not scattering salt.

Defendant seems to have overlooked or has misunderstood the theory of recovery relied on by plaintiff in his principal instruction to the jury. In this instruction the jury was required to find that the defendant had sprinkled salt on the snow and "that this created a slushy, briny condition which was covered by more falling snow * * * and that as a result thereof the platform at the place where Mr. Britt fell was in a condition which might reasonably be expected to cause men pulling wagons, heavily loaded with mail and baggage, to slip and fall, and that by reason thereof the platform there at that time was not in a reasonably safe condition for Mr. Britt to perform such work * * *." In addition to the aforesaid the jury was required to find that defendant, "could have known of such condition * * * in the exercise of ordinary care, to have made it reasonably safe but failed so to do * * *."

■ We agree with plaintiff that defendant cannot rely upon the spreading of the salt to exonerate it from further liability. It was the condition that resulted from spreading the salt that cast upon defendant the continued duty of exercising reasonable care to make the platform safe. If defendant recognized a duty to remedy the hazardous nature of the footing on the platform, prior to spreading the salt, can it say that this same duty no longer existed, after spreading the salt, when a new condition was created that made the footing on the platform equally as hazardous? We cannot say as a matter of law that all reasonable men would agree that defendant could do nothing more about making the platform reasonably safe. We think it was

for the jury to say in view of the evidence before it, whether the defendant exercised ordinary care in not removing the snow and slush, or in failing to spread cinders or sand or in failing to do both. In making this statement we are not unmindful of the fact that it was snowing at the time. It will be remembered that one of the employees on the platform the night of the accident attempted to clean the slush and snow off the platform and was stopped. This same witness testified that he cleaned the spot where he was working. From this testimony the jury could have found that in the exercise of ordinary care defendant could have removed the slush and snow from the platform and thereby have provided a reasonably safe place for its employees to work.

■ The test is whether reasonable men examining the circumstances and the likelihood of injury would have taken the steps necessary to remove the danger. Atlantic Coast Line R. Co. v. Craven, 4 Cir., 185 F.2d 176, loc. cit. 179.

In the case of Bailey v. Central Vermont Railway, Inc., 319 U.S. 350, 63 S.Ct. 1062, 1064, 87 L.Ed. 1444, plaintiff's decedent was injured in a fall from a bridge where the only available footing for decedent at the side of the car was about 12 inches wide. In discussing the duty of the employer to use reasonable care in furnishing its employees with a safe place to work, the court said:

"As stated by this Court in the Patton case, it is a duty which becomes 'more imperative' as the risk increases. 'Reasonable care becomes, then, a demand of higher supremacy, and yet, in all cases it is a question of the reasonableness of the care, reasonableness depending upon the danger attending the place or the machinery.' * * * That duty of the carrier is a 'continuing one' (Kreigh v. Westinghouse, Church, Kerr & Co., supra, 214 U.S. [249] at page 256, 29 S.Ct. [619] at page 622, 53 L.Ed. 984) from which the carrier is not relieved by the fact that

the employee's work at the place in question is fleeting or infrequent.

"The nature of the task which Bailey undertook, the hazards which it entailed, the effort which it required, the kind of footing he had, the space in which he could stand, * * * all these were facts and circumstances for the jury to weigh and appraise in determining whether respondent in furnishing Bailey with that particular place in which to perform the task was negligent. The debatable quality of that issue, the fact that fair-minded men might reach different conclusions, emphasize the appropriateness of leaving the question to the jury. The jury is the tribunal under our legal system to decide that type of issue (Tiller v. Atlantic Coast Line R. Co., supra) as well as issues involving controverted evidence. Jones v. East Tennessee, V. & G. R. Co., 128 U.S. 443, 445, 9 S.Ct. 118, 32 L.Ed. 478; Washington & Georgetown R. Co. v. McDade, 135 U.S. 554, 572, 10 S.Ct. 1044, 1049, 34 L.Ed. 235. To withdraw such a question from the jury is to usurp its functions."

In the case of Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 77 S.Ct. 443, 448, 1 L.Ed.2d 493, the Supreme Court of the United States, when discussing the Federal Employers' Liability Act, said, "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought."

■ We are convinced that the evidence was sufficient from which a jury could find that the spreading of the salt on the platform was not all the defendant could have done in the discharge of its duty to exercise reasonable care to make the platform a reasonably safe place to work. This becomes manifest, not only from the evidence, but, also, from the cases referred to in this

opinion and from other cases examined by this court.

The judgment should be affirmed. It is so ordered.

MATTHES and ANDERSON, JJ., concur.