Gkeen, J.
delivered the opinion of the court.
It is insisted by the counsel for the plaintiffs in error, that Allen and Grant exceeded their agency in this transaction, and that therefore they are not bound by the undertaking of their agents. We are of opinion that the agency created by the letter of Gordon and Walker was a particular, and not a general agency, and that Gordon and Walker would not be bound by any act which was not in strict conformity to the power. The question, therefore, is, whether Allen and Grant exceeded the power vested in them by the letter, so far as this case is concerned. The letter authorized them to procure freight for the boat, and to send her to Nashville. But it is said that this authority was given in the event she could not be sold, and until there is evidence that it was impossible to sell her, the authority to engage freight does not appear. It must be observed, that the agency of Allen and Grant, in relation to this boat, consisted of three several acts, which were not to be performed simultaneously, but which from the nature of those acts were precedent, one to the other. The boat was to be sold if possible; but *80 jf that should be impossible, then the power to engage the freight was communicated; and if freight could be engaged, then it would become necessary to employ a crew. The vessel was not to be sent empty to Nashville; consequently the necessity or propriety of engaging a crew, must be seen to have been dependent on the fact whether a load could be obtained for her. Then as to the first act to be done, the selling the boat if possible. The words “possible” and “impossible,” as used in this letter, are to be understood in a qualified sense. If taken in the most extended meaning, the impossibility of selling the boat could not be ascertained until personal application should be made to every person who was capable of contracting, in Pittsburg, and they had each refused to buy. The absurdity of supposing this was intended, must strike every mind at the first blush. What then was intended? Surely nothing more than that these agents should determine from- their knowledge of the market, the demand for such , boats, and the prices they-would command in market, whether in their judgment she could be sold for the $644, the price limited. If they might thus determine, after having offered to s.ell to one, two or ten individuals, surely they must have had the same power of determining without offering her at all. The impossibility of selling, would no more have been established by the offer to, and refusal of ten individuals, than if she had not been offered at all; for there might by possibility, have been fifty other individuals to whom she was not offered at all, who would have purchased. The probability of her sale would have been lessened by such offers and refusals, but the possibility of such sale, in the extended sense sought to be placed on the term, would have been no more established. It follows then, that the meaning of the letter is, that the possibility of making sale, was to be determined by the judgment of Allen and Grant, from their supposed knowledge of the market; therefore, when they decided that the boat could not be sold, the “im *81 possibility contemplated in the letter existed, and their otter to receive freight was evidence of that decision, and consequently evidence that they were acting in strict accordance with their authority.
The objection, that Allen and Grant did not employ a careful crew, and that they committed that duty to Reno, instead of performing it themselves, has been already answered. The owners of the goods had no control over that matter. They had no right to demand that the crew should be employed before they delivered their goods. The contract for the crew, was not an act to be done simultaneously with the contract for the freight., The contract for the freight they had a' right to make, and if after-1 wards they either failed in some other part of their agency, or acted in violation of their authority, the first contract made in pursuance of their authority is not affected thereby. s For if an agent has executed his commission but for a part, he obliges his principal so far; as if the commission were to purchase fifty snares of the stock of a bank, and the agent contracts with a person who is the owner of but thirty, for the purchase of that number, intending to obtain the other twenty from some other man, the principal will be bound by that contract, although the agent afterwards fail in his attempts to buy the other twenty. Liv. on Agency, 99.
It is said the power was given to two, ' and executed only by one, and that his act alone, is not binding. This principle applies where the power is given to A. B. and C. D. by name as individuals. Although they may be partners, they cannot act as such, but must act jointly as individuals. Not so if the power is given to B. and D. describing them in the style of their partnership concern. In such case the act of one in the name of the firm, is the act of the firm; is done by both, and is in strict pursuance of the power. Such is this case.
Upon the merits of this case, but little stress has been laid in the argument on the objection to the charge of the *82 court. In the charge of the court the law is correctly laid down. Boatmen on our rivers, are liable as common carriers. The law compels them as such to account for all losses not occasioned by the act of God, or the public enemies of the country. This rule, though apparently severe, is salutary and necessary; as necessary to be applied to our rivers as to the high seas. Every thing may be said to be mediately or immediately, the act of God. But this exception has acquired, by a long course of concurrent adjudication, a limited and definite meaning, as applicable to this question. It means disasters with which jthe agency of man has nothing to do, such as lightning, ■ tempests, and the like. The exception in this bill of lading, of i£the dangers of the river which are unavoidable,” narrows down the liability of the owner of the boat. Many disasters which would not come within the definition of the act of God, would fall within the exception in this receipt. Such for instance as losses occasioned by hidden obstructions in the river, newly placed there,, and of a character that human skill and foresight could not have discovered and avoided. The judge in this case, ' properly and fairly left it to the jury to determine whether the obstruction in the case, under consideration was of that character. If they had discovered on the evening before the disaster happened, that there was some obstruction at the landing not known before, the judge correctly said, this ought to have increased and stimulated the vigilance and caution of the hands composing the crew, and if by any known means they could have discovered and removed the obstruction, they ought to have done so. But in this case, it appears to the court, the crew was guilty of great carelessness and inattention. This root or stump did not wash down in the night. The witness says it was heavy and would .not float; that it would require a strong current to move it. Such was not the character of the current the night of the disaster. On the contrary, the river was falling. This fact too they *83 knew, and It ought to have made them the more vigilant. They pushed the boat back, when they discovered the obstruction, and brought her up on the other side thereof; but it is manifest she was permitted to float down on the same obstruction, and pressing her side against it, was turned outward, and thereby filled with water. Let the judgment be affirmed.
Judgment affirmed.