PHYLLIS DAVIS, b/n/f v. The COUNTRY CLUB, INC., et al.

CLIFFORD DAVIS v. The COUNTRY CLUB, INC., et al.—381 S.W.(2d) 308.

Eastern Section. April 24, 1963.

Certiorari Denied by Supreme Court July 15, 1963.

Franklin Park, Jefferson City, and James K. Miller, Morristown, for plaintiffs in error Phyllis Davis and Clifford Davis.

S. J. Anderson, Morristown, for defendants in error The Country Club, Inc., J. B. Christmas, Ralph Massengill and Ralph Doyal, trustees.

COOPER, J. The plaintiff Phyllis Davis brought suit, by next friend, against the defendants, the Country Club, Inc., Ralph Massengill, Ralph Doyal and J. B. Christmas, trustees, seeking to recover damages for personal injuries received when she was struck by a bolt of lightning while in a weather shelter located on the defendants' property. Her father, Clifford Davis, brought suit seek-

ing to recover for medical expenses incurred and to be incurred in the treatment of his daughter's injuries and for loss of her services. The plaintiffs were each awarded a jury verdict of $25,000.00 against the defendants. On motion, the Court set aside the verdicts, and directed verdicts in favor of the defendants, resulting in the dismissal of the suits.

The plaintiffs filed motions for a new trial, and, when they were overruled, perfected their appeal. The assignments of error present the one question of whether or not there was "material evidence in the record from which a jury could find the defendants guilty of negligence" which proximately caused the plaintiffs' injuries and damages.

■■ At the outset, it should be pointed out that there is general agreement that the plaintiff Phyllis Davis was an invitee on the premises of the defendant Country Club at the time she received her injuries. As such, the Country Club owed her the duty of exercising reasonable care to keep the premises in a reasonably safe and suitable condition, including the duty of removing or warning against a dangerous condition which it knew or should have known, in the exercise of reasonable care, to exist. Walls v. Lueking, 46 Tenn.App. 636, 332 S.W.(2d) 692; Kendall Oil Co. v. Payne, 41 Tenn.App. 201, 293 SW.(2d) 40. Liability, if any, of the Country Club must be sustained on the ground that it had superior knowledge of a perilous condition on the premises and it would not be liable for injuries sustained from dangers that were obvious, reasonably apparent, or as well known to the invitee as the owner. Broome v. Parkview, 49 Tenn.App. 725, 359 S.W.(2d) 566; Kendall Oil Co. v. Payne, supra.

In the leading case of Illinois Cent. R. Co. v. Nichols, 173 Tenn. 602, 612, 118 S.W.(2d) 213, 217, it was said:

"In order to impute to the owner knowledge of a dangerous thing, or place, the danger therefrom must be such as is recognized by common experience, or might reasonably be expected or anticipated by a person of ordinary prudence and foresight."

■ In determining if the Country Club exercised reasonable care, it is proper to consider the nature of the property, the use for which it was intended and the particular circumstances of the case. Walls v. Lueking, supra; 65 C.J.S. Negligence sec. 45, page 532.

The record reveals that in April 1957, the defendant trustees, as a part of a community improvement program of the Morristown Chamber of Commerce, acquired property for the development of a country club and golf course. The property acquired, having formerly been a prosperous farm, consisted of open, gently rolling, low hills and no one point was drastically higher than another. The portion of the property set aside for the club house and golf course was leased to the defendant Country Club, Inc.

In developing and operating the golf course, the defendant Country Club, Inc. constructed several open wooden weather shelters or sheds at various locations on the golf course. These shelters were constructed so that the gabled roof peaked approximately 10 feet from the ground. One of these shelters was located near the 16th green, and was so placed that it was on a small knob or knoll. One witness estimated that the peaked roof of the shelter was higher than any other object within an estimated radius of 200 feet; however, an engineering draw-

ing was introduced showing that the ground elevation of the 16th tee, 87 feet away, was 7 feet 6 inches higher than the shelter.

On July 23, 1961, Phyllis Davis, 14 years of age, was playing golf in company with a 16 year old companion, John David Reitz. Storm clouds arose; however, the plaintiff and her companion, believing that they could complete several more holes of golf before the storm began, continued playing rather than returning to the clubhouse. When the storm struck some 30 minutes later, Phyllis and her companion sought cover in the weather shelter near the 16th green. John Reitz left the shelter to cover the golf clubs which had been left in the golf cart nearby. As he was returning to the shelter, a bolt of lightning struck the shelter causing serious injuries to Phyllis Davis and rendering John Reitz unconconscious. The only damage done to the shelter was to knock a small splinter of wood from the underside of the roof, and to split one of the boards used in making the benches inside the shelter.

Lightning, or a bolt or stroke of lightning, occurring in the atmosphere during storms is an act of God. Bennett v. Southern Railway Company, 245 N.C. 261, 96 S.E.(2d) 31, 62 A.L.R.(2d) 785; Gleeson v. Virginia Midland Railway Co, 140 U.S. 435, 11 S.Ct. 859, 35 L.Ed. 458, 462; Sauer v. Rural Co-op. Power Ass'n of Maple Lake, 225 Minn. 356, 31 N.W.(2d) 15; 2 Words and Phrases, Act of God, pp. 287-288, Lightning.

In Ferebee v. Norfolk Southern R. R. Co., 163 N.C. 351, 79 S.E. 685, 686, 52 L.R.A.,N.S., 1114, Hoke, J., writing for the Court said, quoting from Shearman and Redfield on the Law of Negligence, 6th Ed., Sec. 16b: " 'The rule is the same when an act of God or an accident combines

or concurs with the negligence of the defendant to produce the injury or when any other efficient cause so combines or concurs; the defendant is liable if the injury would not have resulted but for his own negligent act or omission.' "

The Court, in Bennett v. Southern Railway Company, 245 N.C. 261, 96 S.E.(2d) 31, 36, 62 A.L.R.(2d) 785, said: "Legal responsibility for negligence joined with an act of God depends upon the fact that the negligence operated as an efficient and contributing cause of injury. Otherwise, the case will fall within the rule that no action lies for an injury attributable to an unavoidable accident. 'One who is under a duty to protect others against injury cannot escape liability for injury to the person or property of such others on the ground that it was caused by an act of God unless the natural phenomenon which caused the injury was so far outside the range of human experience that ordinary care did not require that it should be anticipated or provided against, and it is not sufficient that such phenomena are unusual or of rare occurrence.' 65 C.J.S., Negligence, sec. 21, p. 433.''

The precise question, then, we have for decision is this: Considering the plaintiffs' evidence as true and in the light most favorable to them, and giving to them all reasonable inferences to be drawn from the evidence, have they produced evidence that the defendant was negligent, and that such negligence, joined with an Act of God, was the proximate cause in whole or in part of the plaintiffs' injuries and damages? If so, the plaintiffs' cases should have been submitted to the jury. If not, the action of the trial court in directing verdicts for the defendants and dismissing plaintiffs' cases was correct.

The plaintiffs contend (1) that the defendants were

guilty of negligence in locating the shelter so that it was exposed and was higher than the surrounding ground as it created a hazardous and dangerous place because of lightning; and (2) that having so located the shelter, the defendants were guilty of negligence in failing to provide lightning protection equipment for the shelter.

Several expert witnesses testified concerning lightning and its effect and the consensus of their testimony seems to be that, all other things being equal, lightning would tend to strike a person, building, tree or any other object in open country, where the person, building, tree or object was higher than the surrounding ground. The experts were further in agreement that there is nothing we can do to prevent lightning from striking, but that damage can be eliminated or minimized by enclosing a structure in metallic conductors which will take the electric current.

Mr. H. M. Scull, a professor at the University of Tennessee, stated that the shelter was more than an "average" hazard because of its location. No effort was made to define an "average" hazard. Dr. W. E. Deeds, also a professor at the University of Tennessee, testified that the hazard of a person being struck and injured by lightning while in the shelter was less than that of being struck and injured while standing in the open on a golf tee. In either instance, the hazard was caused by being in the open and being higher than the surrounding ground.

Admitting that the possibility of the weather shelter being struck by lightning, because of its location, was more than an "average" hazard, it would still be very remote as shown by the infrequency of lightning striking the innumerable objects meeting the test of being in

the open and being higher than the surrounding ground. In the present case, there was higher ground only 87 feet away; yet, lightning struck the shelter.

As pointed out by Judge Parker of the North Carolina Supreme Court in Bennett v. Southern Railway Company, 245 N.C. 261, 96 S.E.(2d) 31, 37, 62 A.L.R.(2d) 785; "Where lightning will strike, to use a Mohammedan phrase, God knows."

The Texas Court of Civil Appeals said in Western Telephone Corp. v. McCann, Tex.Civ.App., 69 S.W.(2d) 465, 468:

"It may be technically true, as appellant and its experts contend, that the phenomena of lightning is 'highly complex,' rather than 'freakish.' As a practical matter, the uncertainties inherent in a bolt of lightning may not be encompassed in either or both of those terms, or in any term of any known language. It is known, only, that it is all-powerful, all-embracing, inconsistent, inscrutable, searching, terrifying, beautiful, deadly. It is no respecter of persons, places, or occasions." See also Bennett v. Southern Railway Company, supra.

■ In our opinion, after considering the evidence in this case in the light most favorable to the plaintiffs, the only reasonable conclusion to which fair-minded men could arrive is that the danger of the shelter being struck by lightning was so remote as to be beyond the requirement of due care, and, therefore, the injuries and damages of the plaintiffs were not caused in whole or in part by any negligence of the defendants. Bare possibility is not sufficient. "Events too remote to require reasonable prevision need not be anticipated." Brady v. Southern R. Co., 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239.

As said by Mr. Justice Holmes, when on the Massachusetts Court, "If men were held answerable for everything they did which was dangerous in fact, they would be held for all their acts from which harm in fact ensued. The use of the thing must be dangerous according to common experience, at least to the extent that there is a manifest and appreciable chance of harm from what is done, in view either of the actor's knowledge or of his conscious ignorance." Com. v. Pierce, 138 Mass. 165, 52 Am.Rep. 264.

We conclude, therefore, that the judgments of the trial court were correct and must be affirmed. Costs of the appeal are adjudged against the plaintiffs and their sureties.

McAmis, P. J., concurs.

Earnest T. Taylor, Special Judge, not participating.