**Rebecca L. HAMES, Plaintiff–Appellee,**

v.

**STATE of Tennessee,
Defendant–Appellant.**

Supreme Court of Tennessee,
at Knoxville.

April 8, 1991.

Jackson C. Raulston, Kingsport, for plaintiff-appellee.

Charles W. Burson, Atty. Gen. and Reporter, John Knox Walkup, Sol. Gen., Michael W. Catalano, Deputy Atty. Gen., for defendant-appellant.

OPINION

DROWOTA, Justice.

In this wrongful death case, the State of Tennessee, Defendant–Appellant, appeals the decision of the intermediate appellate court awarding $300,000.00 to the Plaintiff, Rebecca Hames, Plaintiff–Appellee. The sole issue in this appeal is whether the absence of lightning proof shelters or devices to warn golfers of thunderstorms on a golf course owned and operated by the State of Tennessee, constitutes a negligent-

ly created or maintained dangerous condition within the meaning of T.C.A. § 9–8–307(a)(1)(C).[1] For the reasons set forth below, we reverse and remand.

The proof at trial revealed that the decedent, Phillip Hames, 36 years old at the time of his death on July 3, 1987, was employed as an organist and choir master at the First Presbyterian Church at Kingsport. He graduated from college *magna cum laude* with a music degree. He was regarded as a musical genius and hoped to ultimately become a concert pianist.

The decedent's wife testified that her husband began to develop an interest in golf in the fall of 1986. She testified that he played at least 20 times and that most of those rounds were played at the Warrior's Path State Park where he was struck by lightning on July 3, 1987. On that particular day, the decedent and two golfing companions checked out carts and began to play at approximately 1:45 p.m. Although the weather was overcast, there were no signs or warning devices informing players what to do in case of violent weather. There were no weather shelters on this particular course although funding for them had been requested over a ten year period. The cost of constructing one lightning proof shelter was estimated to be $4,500.00. Approximately 25 minutes after the three men began to play, a thunderstorm moved over the golf course area. Lightning began at about this time and continued until approximately 2:30 p.m. Shortly thereafter, the three golfers were discovered underneath two trees after having been struck by lightning. The trees were located on a small hill, proving to be a deadly combination. The Plaintiff's decedent was instantly rendered brain dead upon being struck by the lightning. The death certificate indicates that he died from cardiac arrest due to electrocution by lightning.

The record establishes that although the decedent was not an expert golfer, he was certainly familiar with the layout and grounds of the golf course and had previously played golf at Warrior's Path State Park. On the day he was struck by lightning, no signs were posted warning golfers to seek cover in the event of a thunderstorm and no effort was made to clear the golf course by course employees. The Plaintiff contends this is significant because Warrior's Path State Park golf course operated under the United States Golf Association's rules. These rules specifically warn of the dangers of lightning to golfers and make suggestions for the prevention of such danger. The USGA recommends the posting of notices outlining these dangers and precautions to minimize them. An electrical engineer who testified on behalf of the State stated that it was possible to design a lightning proof shelter on golf courses. The electrical engineer further testified that lightning is a well known hazard on golf courses and that it presented no greater hazard there than in any other open area. Significantly, there was expert testimony that no recognized standard existed that golf courses be equipped with lightning proof shelters or with warning devices, although some golf courses in state parks are equipped with shelters.[2] A golf course architect and engineer testified that he and his consulting firm have designed approximately 45 golf courses throughout the southeast of which none had provisions for any type of lightning proof shelters. Of the approximately two hundred courses that the golf course architect has been on, very few had warning devices. This particular expert, who is also an avid golfer, stated:

---

1. T.C.A. § 9–8–307 vests the commissioner with the jurisdiction to determine all monetary claims against the state falling within one of several categories, one of which is: "Negligently created or maintained dangerous conditions on state controlled real property. The claimant … must establish the foreseeability of the risks and notice given to the proper state officials at a time sufficiently prior to the injury for the state to have taken appropriate measures." T.C.A. § 9–8–307(a)(1)(C).

2. Of the eight golf courses owned and operated by the State, three have weather shelters. The record implies that these are not lightning proof.

"I think golfers are such that they understand the basic rules or they should understand the basic rules. Whether it's golfing or boating there are some things that let's say are kind of unwritten laws or things that you learn as one grows up and I think whether you're out on a lake and you see a storm coming up or whether you're out on a golf course and you see a storm coming up you learn to stop and go to the club house or you learn to stop and go to the bank and seek cover."

A professional golfer, who has played on three to four hundred different courses, testified that he has never played for enjoyment or for practice when warning sirens were in place; such devices are used only to stop tournaments. The manager of the golf course subject to dispute here testified that the distance from where Mr. Hames was struck by lightning to the clubhouse was about 800 yards and that it would have taken less than two minutes to get there in a golf cart. The manager, referring to other golfers on the course, stated that "most everyone had gone in."

The Plaintiff sued the State of Tennessee for the wrongful death of her husband. The complaint was predicated upon the theory that, although lightning is generally regarded as an act of God, the death was the result of the State's negligence in failing to erect lightning proof shelters or maintaining a warning system to vacate the golf course during electrical storms. In the State's response, it was affirmatively asserted that the decedent died from dangers the risk of which he assumed, that he, himself, was negligent by seeking shelter under a tree on a hill, and that the death resulted from an act of God as opposed to actions (or inactions) taken by the State as owner and operator of the golf course. When the matter was tried in 1989, the Claims Commissioner found in favor of the State, reasoning that there is no industry standard requiring storm shelters or warning devices and that "common knowledge tells one that lightning is dangerous." The Commissioner stated:

"It is common knowledge by persons of ordinary or greater intelligence, such as Mr. Hames, that lightning is a powerful, deadly, and potent act of God and nature. While negligence of man, when combined with an act of God is actionable, if the injury would not have resulted but for the negligent act, the absence of a horn does not seem to be such an act. Lightning is accompanied by thunder, the ominous sound of the approach of the power in the storm. No warning device could be louder or be more accurate than thunder. Thunder warns all persons that lightning is near. It just does not seem that man can devise any warning device which approaches the efficiency of thunder. The absence of a warning device would not create a dangerous condition on state controlled real property. Furthermore, claimant contends that the State either did not have a policy to clear the course during storms, or should have had one, or if they had, they did not follow that policy. The Commissioner finds from listening to the proof that no policy existed to clear the course. Further, the absence of this policy did not create a dangerous condition on state controlled real property. Nor was there evidence that the industry standard required such a policy.

Also, the absence of signs concerning lightning ... were contended to create a dangerous condition by failure to warn of the dangers of lightning, and the precautions to take. Again, common knowledge tells one that lightning is dangerous. It does not seem to the Commissioner that the absence of the signs creates or maintains a dangerous condition on state controlled real property."

Finding that the evidence preponderated against the conclusions of the Commissioner, the Court of Appeals reversed and awarded the Plaintiff $300,000.00. The intermediate appellate court found that the State had notice of a dangerous condition established by "the evidence not adhering to the rules of the golfing association, repeated requests for shelters by park employees before the incident, and the park manager's observation in an official memorandum that these deaths might not have occurred had shelters been available." The

Court also rejected the contributory negligence defense, opining that there was no evidence that the deceased possessed any particular knowledge as to the hazards of lightning on golf courses. The Court went on to state that "[t]he failure to post signs warning of the hazards of lightning on the golf course coupled with the failure to provide lightning proof shelters, along with the lack of a policy to clear the course during thunderstorms, constitute the proximate cause of Plaintiff's death. The argument that deceased was in a place of danger when struck by lightning proves too much."

The Plaintiff has the burden of establishing that the State negligently created or maintained a dangerous condition on the golf course and further that foreseeability of the risks and notice had been given to proper State officials at a time sufficiently prior to the injury to enable appropriate remedial measures. T.C.A. § 9–8–307(a)(1)(C). The statute itself provides that the State's liability is to be predicated upon "traditional tort concepts of duty and the reasonably prudent person's standard of care." T.C.A. § 9–8–307(c). For purposes of determining liability under the statute, the State is to be treated as a private individual. T.C.A. § 9–8–307(a)(3),(d). Thus, for the purposes of deciding the State's liability after removal of immunity, the statute codifies the common law obligation of owners and occupiers of land. *Sanders v. State*, 783 S.W.2d 948, 951 (Tenn.App.1989). We note that any discussion of "negligently created or maintained conditions," "reasonable care," and "foreseeability of risks" inescapably involves traditional principles of negligence law generally, these being: (1) a duty of care owed by the Defendant to the Plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, cause. See *McClenahan v. Cooley*, 806 S.W.2d 767 (Tenn.1991). There is no question that the State owed a duty to Mr. Hames as the owner and operator of the golf course to exercise reasonable care under all of the attendant circumstances to make the premises safe. *Hudson v. Gaitan*, 675 S.W.2d 699, 703 (Tenn.1984). There is also no question that there has been an injury and that causation in fact has been established in this case.

The parties are in agreement that lightning is generally regarded by the law as an act of God. "Any misadventure or casualty is said to be caused by the act of God when it appears by the direct, immediate, and exclusive operation of the forces of nature, uncontrolled or uninfluenced by the power of man and without human intervention." *Butts v. City of South Fulton*, 565 S.W.2d 879, 882 (Tenn.App.1978). See also *California Spruce Co. v. Black Mt. Ry.*, 139 Tenn. 137, 201 S.W. 154 (1917) (act of God is a "happening, due directly and exclusively to a natural cause or causes in no sense attributable to human agencies, which happening is not to be resisted or prevented by the exercise of such foresight, prudence, diligence, and care as the situation of the defendant may reasonably have called it to exercise."); *Gordon v. Buchanan*, 13 Tenn. 71 (Tenn.1833) ("[e]verything may be said to be immediately the act of God. But this ... has acquired, by a long course of concurrent adjudication, a limited and definite meaning ... disaster with which the agency of man has nothing to do such as lightning, tempest and the like.").

In *Davis v. Country Club, Inc.*, 53 Tenn. App. 130, 381 S.W.2d 308 (1963), lightning was held to be an act of God. *Davis* presented the situation where a golfer sought refuge when a storm arose in a weather shelter which was not lightning proof. The Plaintiff was injured after lightning struck the shelter and she sued the owners and operators of the course on the theory that it was negligent not to provide lightning protection equipment for the shelter in view of its relative elevated position on the golf course. The Court noted that no action lies for an injury wholly attributable to an act of God, but that legal responsibility for negligence joined with an act of God depends upon whether the negligence operates as the proximate cause of the injury. While the plaintiff in

*Davis* had been injured when the course owner and operator's weather shelter in which she was standing was struck by lightning, the court determined that the only reasonable conclusion to which fair minded persons could arrive was that the danger of the shelter being struck by lightning was so remote as to be beyond a requirement of due care, and therefore there could be no recovery. Affirming the judgment rendered in favor of the defendant, the court concluded that the possibility of injury was not sufficient, and anticipation of events of this type were too remote to impose legal liability. "Bare possibility is not sufficient." *Davis* 381 S.W.2d at 311. The *Davis* decision is consistent with the general rule that if injury or damage results from an act of God and, concurrently, an act of negligence by the defendant, the defendant cannot escape liability if the injury or damage would not have occurred except for the defendant's failure to exercise due care. See Annotation, *Personal Injury or Property Damage Caused by Lightning as Basis of Tort Liability*, 46 A.L.R. 4th 1170 (1986); 1 Am.Jur.2d "Act of God," § 1 et seq. 1962. Professor Prosser observes:

> "It is quite often said in cases that when the negligence of a defendant 'concurs' with an act of God, which is to say an unforeseeable force of nature, the defendant is to be held liable. Sometimes it is a problem what this is supposed to mean. In most of the cases the result brought about by the act of God is the same as that threatened by the defendant's negligence, so that the defendant is held liable for the foreseeable result. Where a totally different result is brought about, most cases agree that there is no liability, even though there is concurrence in causation."

Prosser and Keaton, *The Law of Torts*, § 44, p. 314–15 (5th Ed.1984).

Applying the foregoing principles to the facts presented here, we are persuaded that there can be no recovery as a matter of law. While there are a variety of ways to analyze this case, there are two problems we think fatal to the Plaintiff's claim: (1) no conduct falling below the standard of care and (2) no proximate causation, both of which are essential elements of proof in a case such as this. As to proximate causation, it appears that the proximate cause of the death was the bolt of lightning, as opposed to anything that the State may or may not have done. While the argument can be made that the absence of lightning proof shelters and warning devices was to some extent responsible for the death, the rule is that where two distinct causes, unrelated in operation, one of them being the "direct cause" and the other furnishing the condition by which the injury was made possible, the former alone is to be regarded as the proximate cause of the result. *Ward v. University of the South*, 209 Tenn. 412, 354 S.W.2d 246, 251 (1962). Even assuming that the failure to provide shelters or utilize warning devices was negligence, such failure merely furnished the condition by which lightning could strike the decedent.

 With regard to conduct falling below the applicable standard of care, and on a more fundamental level than proximate cause, is the realization that lightning is such a highly unpredictable occurrence of nature, that it is not reasonable to require one to anticipate when and where it will strike. Stated another way, the risk to be guarded against is too remote to impose legal liability. We also think the risks and dangers associated with playing golf in a lightning storm are rather obvious to most adults. It would have taken less than two minutes for the decedent and his companions to reach the relative safety of the clubhouse. It is reasonable to infer that a reasonably prudent adult can recognize the approach of a severe thunderstorm and know that it is time to pack up the clubs and leave before the storm begins to wreak havoc. Indeed, most of the golfers on the course did just that. It is also significant that there is no industry standard to implement warning devices or shelters that are lightning proof; indeed, the proof clearly reveals that most golf courses do not contain either warning devices or lightning proof shelters. Customary conduct, while not conclusive or controlling, may be con-

sidered as furnishing a standardized gauge and as one circumstance to be weighed along with all others in determining whether or not ordinary care has been exercised. See *Bryan v. Hubbard,* 32 Tenn.App. 648, 225 S.W.2d 282 (1949). With regard to the USGA rules, the superintendent of Warrior's Path testified that the rules govern primarily tournament play and thus they are not applicable here. In sum, we hold that the defendant's conduct did not fall below the applicable standard of care, reasonableness under all the circumstances, and thus there was no negligence. Even beyond this, the conduct (or lack of it) purported to be negligent was not the proximate cause of the death.

For the foregoing reasons, the judgment of the Court of Appeals is reversed, the complaint dismissed, and the matter remanded for any further proceedings that may be necessary. Costs of the appeal are adjudged against the Plaintiff.

REID, C.J., O'BRIEN and DAUGHTREY, JJ., and WADE, Special Justice, concur.